UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDEL FATAH ELLAWENDY,<br><br>    Plaintiff,<br><br>    v.<br><br>JASON TAKAGAKI, et al.,<br><br>    Defendants. | Case No. 21-cv-05273-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 53, 64 |

Defendant Jason Takagaki moves to dismiss the complaint brought by pro se plaintiff Abdel Fatah Ellawendy, who alleges that Takagaki violated his Fourth Amendment rights when Takagaki seized Ellawendy's laptop and detained him. The sole remaining claim in this case is asserted under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1999), but arises in a new context not previously recognized under *Bivens* or its progeny. Two special factors counsel hesitation about extending *Bivens* into this new territory: at least two alternative remedial structures, which Ellawendy utilized, and the military/Department of Defense context in which his claim arises. This warrants dismissal of Ellawendy's claim with prejudice, as any amendment would be futile because he cannot cure these problems.

## BACKGROUND

Ellawendy was a civilian instructor at the Department of Defense ("DoD")'s Defense Language Institute Foreign Language Center ("DLIFLC"), located on the United States Army's Presidio of Monterey Garrison. *See* Second Am. Compl. ("SAC") [Dkt. No. 15] ¶ 9. In November 2017, he alleges that he began to receive harassing messages from an ex-girlfriend on his work phone and email, prompting him to contact the Presidio of Monterey police. *Id*. ¶ 14. A few days later, Takagaki—identified in the SAC as a "federal official and an investigator for the

Department of the Army"—contacted Ellawendy about his report. *Id*. ¶¶ 4, 15.

In mid-March 2018, Ellawendy alleges that Takagaki "raided" his office and said that he was seizing Ellawendy's laptop "for investigation." *Id*. ¶ 17. According to Ellawendy, Takagaki did this without a warrant. *Id*.

Two days later, Ellawendy went to the Presidio of Monterey police station to retrieve his laptop, where he alleges that Takagaki "lured [him] to an investigation room," "directed false accusation[s]" at him, and "started threatening to get [him] fired." *Id*. ¶ 18. Takagaki then allegedly told Ellawendy that Takagaki wanted his personal laptop. *Id*. When Ellawendy refused, Takagaki "started to intimidate [him]," and said, "We will take you now to your home in the police car and you are going to give me your personal laptop." *Id*.

According to Ellawendy, "Takagaki kidnapped [him] in the police car," drove to Ellawendy's apartment, and told him to give Takagaki his personal laptop. *Id*. When Ellawendy again refused, Takagaki allegedly threatened him. *Id*. Ellawendy contends that because Takagaki was armed and threatening him, he "had no choice" but to give him the laptop. *Id*. Takagaki and Ellawendy then returned to the police station, where Ellawendy alleges he was unlawfully detained for more than two hours. *Id*.

Ellawendy alleges that he made multiple grievances and complaints to an unnamed supervisor, the inspector general, and the DLIFLC commander. *Id*. ¶ 20. He contends that the Army retaliated against him by falsely accusing him of misusing government property and time, and by terminating him in April 2018. *Id*. ¶ 21. In May of that year, Ellawendy filed a complaint with the Equal Employment Opportunity Commission ("EEOC") "regarding the discrimination, the violation of civil rights and retaliation [he] suffered." *Id*. ¶ 22.

He filed this lawsuit on July 8, 2021, the first of three cases he filed in this district arising from his termination of employment. Dkt. No. 1. Ellawendy alleged causes of action against the Army, Presidio of Monterey Police Department, and Takagaki for hostile work environment and retaliation violations of Title VII, violations of the First and Fourth Amendments, a 42 U.S.C. § 1983 violation based on the Fourteenth Amendment, abuse of office, and connivance. *Id*. After Magistrate Judge Nathanael M. Cousins recommended dismissing most of the claims with leave to

amend, Ellawendy filed a largely identical amended complaint. Dkt. Nos. 5, 11, 13. I adopted Judge Cousins' Report and Recommendation, dismissing Ellawendy's abuse of office claim (restyled as an "official misconduct" claim in the amended complaint) without leave to amend, and the Title VII and section 1983 claims with leave to amend. Dkt. No. 13.

Ellawendy then filed his SAC, which I reviewed pursuant to 28 U.S.C. § 1915(e)(2)(B). Dkt. No. 15. I dismissed his Title VII and Fourteenth Amendment claims without leave to amend, but allowed his Fourth Amendment claim against Takagaki to proceed. Dkt. No. 19. Takagaki then filed this motion to dismiss. Dkt. No. 53.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se

3

1  pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim
2  has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

3  If the court dismisses the complaint, it "should grant leave to amend even if no request to
4  amend the pleading was made, unless it determines that the pleading could not possibly be cured
5  by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making
6  this determination, the court should consider factors such as "the presence or absence of undue
7  delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,
8  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*
9  *Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

In *Bivens*, the Supreme Court allowed a damages action against federal officials for alleged Fourth Amendment violations. 403 U.S. at 397. *Bivens* essentially functions as a judicially created federal analog to section 1983, which allows plaintiffs to seek damages for constitutional violations by state officials. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (comparing *Bivens* to section 1983).

In the decades since *Bivens* was decided, the Supreme Court has kept its scope narrow, recognizing only two additional causes of action under *Bivens*—for a former congressional staffer's Fifth Amendment sex-discrimination claim and a federal prisoner's Eighth Amendment inadequate-care claim—while routinely rejecting invitations to add to the list. *See Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("[F]or almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*."). Indeed, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (citation omitted). As recently as this summer, the Court again described recognizing a *Bivens* cause of action as "an extraordinary act that places great stress on the separation of powers." *Egbert*, 142 S. Ct. at 1806 n.3 (citation omitted).

There is a two-step inquiry for analyzing claims brought under *Bivens*. *See id*. at 1803. First, the court must ask whether the claim "arises in a new context or involves a new category of defendants." *Hernandez*, 140 S Ct. at 743 (citation omitted). The Court has cautioned that "our

4

understanding of a 'new context' is broad," and that a context is "new" "if it is different in a meaningful way from previous *Bivens* cases decided by this Court." *Id*. (citation omitted).

If the claim arises in a new context, the court then asks "whether there are any special factors that counsel hesitation" about extending *Bivens* to that new context. *Id*. (citations and modifications omitted). In other words, if the court has "reason to pause because applying *Bivens* in a new context or to a new class of defendants," the request to extend *Bivens* is denied. *Id*. The Supreme Court has not set forth an exhaustive list of what those reasons might be, but generally considers whether there are "special factors indicating that the judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803 (citation and quotation marks omitted). A single reason to pause is enough to decide against extending *Bivens*. *See id*.

When a plaintiff asserts a claim under *Bivens* that has not previously been recognized, the two-step inquiry essentially asks "a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*.

I.  **Whether Ellawendy's *Bivens* Claim Arises in a New Context**

Takagaki's primary argument is that Ellawendy's claim should be dismissed because it presents a new *Bivens* context and special factors counsel hesitation about extending *Bivens* to cover it. Mot. to Dismiss ("MTD") [Dkt. No. 53] 2:5-13. Takagaki is correct.

To determine whether Ellawendy's claim presents a new *Bivens* context, it is not enough that his claim arises under the Fourth Amendment, as did the claim in *Bivens*. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. This is true even when the case at hand has "significant parallels to one of the Court's previous *Bivens* cases," as "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864. Instead, I must focus on whether Ellawendy's claim "involve[s] a new context, i.e., one that is meaningfully different." *Hernandez*, 140 S. Ct. at 743.

The Supreme Court has recognized a *Bivens* cause of action in three instances: against narcotics agents accused of arresting a man and searching his home without a warrant; against a

member of Congress for alleged sex-based discrimination; and against federal prison officials for failing to treat an inmate's asthma, resulting in his death. *See Bivens*, 403 U.S. at 389; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

As the only Fourth Amendment case on the list, *Bivens* itself provides the closest context to this case. But the context in which Ellawendy's claim arises is meaningfully different than that in *Bivens*. In *Bivens*, the plaintiff accused narcotics agents of entering his apartment, handcuffing and arresting him, threatening to arrest his entire family, searching his apartment "from stem to stern," and then taking the plaintiff to a federal courthouse where he was interrogated, booked, and strip searched. 403 U.S. at 389. He alleged that the agents made a warrantless arrest and search, lacked probable cause, and used unreasonable force. *Id*.

The new context here is that Ellawendy's claim arises from actions purportedly taken by a police officer assigned to a military installation as part of an investigation into events related to an instructor at a DoD institution. *See* SAC ¶¶ 14-15. Ellawendy argues that Takagaki is a federal police officer, "not . . . military personnel," and therefore his claim is not asserted against a new category of defendants. Oppo. [Dkt. No. 55] ¶ 5. But the SAC alleges that Takagaki is a "[D]epartment of the Army official" and a "federal official and an investigator for the Department of the Army." SAC ¶¶ 4, 9. Whether Takagaki was a civilian or enlisted police officer, the alleged seizures (of Ellawendy and his laptop) still occurred in the military/DoD context. Ellawendy was an U.S. Army employee who taught at a school located on an Army installation. He contacted police stationed on that Army installation after receiving threats on his work devices. *See id*. ¶¶ 9, 14. The purportedly unlawful seizures occurred at the hands of an Army official. *See id*. ¶¶ 4, 9, 18. The SAC does not specify whether Ellawendy's apartment was also located on the Army installation, but it does allege that he was taken back to the police station and unlawfully detained there. *See id*. ¶ 18.

There is a military/DoD throughline in Ellawendy's claim that is not found in *Bivens*. Although both allege unlawful seizures under the Fourth Amendment, "almost parallel circumstances or a similar mechanism of injury . . . are not enough to support the judicial creation of a cause of action." *See Egbert*, 142 S. Ct. at 1805. Instead, the military/DoD context of

6

Ellawendy's claim renders it meaningfully different from the three *Bivens* contexts the Supreme Court has recognized.

## II. Whether Any Special Factors Counsel Hesitation About Extending *Bivens*

I must next consider whether any special factors counsel hesitation about extending *Bivens* to cover this new context. Takagaki raises two that give me such pause: the alternative remedial structures that are in place, and the military/DoD context of the claim. *See* MTD at 6:27-12:2.

### A. Alternative Remedial Structures

This summer, the Supreme Court reiterated that "a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (citing *Ziglar*, 137 S. Ct. at 1858); *see also Ziglar*, 137 S. Ct. at 1863 ("when alternative methods of relief are available, a *Bivens* remedy usually is not"). As the Court explained in *Ziglar*:

> For if Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.

137 S. Ct. at 1858 (citations and modifications omitted). As the Ninth Circuit has recognized, these alternative remedial structures "can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). In *Hernandez* and *Egbert*, the Court declined to extend *Bivens* in part because alternative remedial structures—in the form of investigation processes—were in place and had been utilized. *See Egbert*, 142 S. Ct. at 1806.

Takagaki argues that not only were alternative remedial structures available to Ellawendy, but that Ellawendy pursued them. MTD at 7:18-21 (citing SAC ¶¶ 6, 20). The SAC alleges that Ellawendy "made multiple grievances," including to "the supervisor, the IG, and the commander of the DLIFLC in addition to reporting the official misconduct and filing a police report of the incident." SAC ¶ 20. It further alleges that he filed a charge with the EEOC. *Id.* ¶ 6.

Two of those processes are most relevant here. Beginning with the inspector general, Takagaki notes that 5 U.S.C. § 301 allows the head of an Executive or military department to

7

"prescribe regulations for . . . the conduct of its employees." *See* MTD at 7:8-10. He then points to 10 U.S.C. § 7020, which establishes an Inspector General of the Army who shall "inquire into and report upon the discipline, efficiency, and economy of the Army." *See id*. at 7:8-15. Army Regulation 20-1 outlines the duties of inspectors general throughout the Army, which include the investigation of "violations of policy, regulation, or law; mismanagement; unethical behavior; fraud; or misconduct." *See* Inspector General Activities and Procedures, Army Reg. 20-1, Ch. 7-1(a), https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/ARN8255_AR20-1_FINAL.pdf (last accessed Dec. 15, 2022).

Takagaki also points to the EEOC, which Congress created and bestowed upon the authority to "prevent any person from engaging in any unlawful employment practice," in part by investigating charges that an employer has engaged in such a practice. *See* MTD at 8:25-9:12; *see also* 42 U.S.C. § 2000e-4, e-5. Such charges may be filed "by or on behalf of a person claiming to be aggrieved." 42 U.S.C. § 2000e-5(b).

Ellawendy does not dispute that he sought alternative remedies; instead, his argument is that those remedies were ineffective. Oppo. ¶¶ 7-8. He contends that when he invoked "the available Army and government channels . . . instead of solving the problem the Department of the Army elected to terminate" him. *Id*. ¶ 7. He further argues that the Army "conducted a mock investigation to cover up for the officer misconduct," meaning the "alternative processes were meaningless." *Id*. ¶ 8.

In *Egbert*, the respondent filed a grievance against the Border Patrol agent whose actions were at issue, prompting a year-long internal investigation into the agent's conduct. *See* 142 S. Ct. at 1806. In holding that this was an alternative remedial structure foreclosing a cause of action under *Bivens*, the Supreme Court rejected the argument that the Border Patrol's process was inadequate because the respondent could not participate and had no right to judicial review of an adverse decision. *Id*. As the Court wrote:

> [T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is

true even if a court independently concludes that the government's procedures are not as effective as an individual damages remedy.

*Id*. at 1807 (citation and quotation marks omitted).

Ellawendy effectively asks me to second-guess the remedial processes that Congress and/or the Executive Branch created by superimposing a *Bivens* remedy atop them. As alleged, Ellawendy filed complaints with both the inspector general and the EEOC. SAC ¶¶ 6, 20. The former is tasked with investigating complaints alleging violations of policy, regulation, or law; the latter with investigating charges of unlawful employment practices. Ellawendy's allegations—that Takagaki violated his Fourth Amendment rights against unreasonable seizure—would fall within the inspector general's purview as a violation of the law. To the extent that Takagaki's alleged acts constituted unlawful employment practices, they were also encompassed by Ellawendy's EEOC charge. *See id.* ¶ 22 (alleging that Ellawendy filed the EEOC complaint "regarding the discrimination, the violation of civil rights and retaliation [he] suffered").

Ellawendy's complaint alleges that "[d]espite the numerous complaints made against Jason Takagaki regarding discrimination and violation of civil rights the department of the Army never took any disciplinary action against him" and instead terminated Ellawendy "to cover up for [Takagaki's] misconduct." *Id*. ¶ 24. Ellawendy may disagree with the results of the remedial processes that he invoked, but that does not necessarily mean that those processes were inadequate. And any question of whether they were in fact adequate is "a legislative determination that must be left to Congress, not the federal courts." *See Egbert*, 142 S. Ct. at 1807. The Court was clear in this conclusion in *Egbert*; I must follow it here. The adequacy of these remedial processes is not for me to assess. Congress and the Executive set forth alternative remedial structures that covered Ellawendy's claim against Takagaki, meaning a special factor exists that counsels hesitation before extending *Bivens* into this context.

Although this alone is enough to dismiss Ellawendy's claim, another special factor exists that also gives me pause: the military/DoD context in which it arises.

### B. Military/DoD Context

The Supreme Court has at least twice declined to extend *Bivens* to military affairs. In *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), it determined that "the unique disciplinary

9

structure of the military establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." In particular, the Court noted the "special relationships that define military life" that "supported the military establishment's power to deal with its own personnel." *Id*. at 305. "The most obvious reason," the Court wrote, "is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." *Id*. (citation omitted).

Four years later, the Supreme Court made clear that the "special factors counselling hesitation—the unique disciplinary structure of the military establishment and Congress' activity in the field—extend beyond the situation in which an officer-subordinate relationship exists." *United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (citation and quotation marks omitted). The Court expressly held that "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service." *Id*. at 684 (same). In other words, a *Bivens* remedy is not available in the military context "even where the defendants were alleged to have been civilian personnel." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (citing *Stanley*, 483 U.S. at 681).

Since *Chappell* and *Stanley* were decided, lower courts have declined to extend *Bivens* in the military context, even when the plaintiffs were not current or former active-duty members of the military. For example, the Fourth Circuit declined to extend *Bivens* to constitutional claims brought by a federal civil servant employed by the United States Navy against a group of defendants that included a school principal and social worker who were DoD employees, arising from conduct that allegedly occurred on a Navy installation. *Doe v. Meron*, 929 F.3d 153, 161 (4th Cir. 2019). The court determined that "[m]ultiple special factors counsel against such extension," the first of which being that "Doe's claims arose in a military context." *Id*. at 169.

Similarly, in *Doe v. United States*, 381 F. Supp. 3d 573, 583-84 (M.D.N.C. 2019), the district court declined to extend *Bivens* to cover constitutional claims brought by parents alleging that their children had been abused by an instructor at DoD-operated elementary schools. The court noted that the case did not "present the same concerns generally associated with litigation

10

involving our military" in that it was not an incident-to-service case, did not involve enlisted personnel seeking a *Bivens* remedy against their superior officers, and did not "involve sensitive issues of national security or the administration of a uniquely defense-orientated institution in the same manner as another case involving the DoD might." *Doe*, 381 F. Supp. 3d at 618. Nonetheless, the court held, "[t]he DoD context of this case is the most significant special factor counselling hesitation." *Id*. at 617. In particular, the court noted that "[t]he relevant alleged acts and omissions did occur on a United States military base" and involved "regulations and employees of" a civilian agency of the DoD. *Id*. at 618.

      The military and DoD presence here gives me similar pause. This case involves an Army employee and instructor at a DoD-led school located on an Army installation. *See* SAC ¶ 9. The alleged acts giving rise to Ellawendy's claim were committed by a "department of the Army official." *Id*. And at least some of those acts allegedly happened on the Army installation, including Ellawendy's detention and the genesis of Takagaki's investigation (the messages from Ellawendy's ex-girlfriend left on his work phone and email). *See id*. ¶¶ 14, 18. Ellawendy's claim relates to DoD and Army operations, even if only in the civilian setting.

      Ellawendy argues that his claim "does not involve military personnel or military affairs," contending that Takagaki "is neither [] military personnel nor a service member" and instead a "civilian federal police officer." Oppo. ¶ 6. But Ellawendy acknowledges that his complaint "was made to the Department of the Army where the plaintiff was assigned for work." *Id*. And he does not otherwise contest Takagaki's arguments that Ellawendy's duties as an assistant professor at DLIFLC "were intertwined with that institution's function of preparing military members to protect American national security interests" and that Takagaki's alleged misconduct "relates to his investigation of plaintiff's workplace activity and therefore his fitness as an instructor," meaning it "bears directly on plaintiff's duties at a military academic establishment." MTD at 11:12-19. Moreover, Takagaki contends, because both he and Ellawendy were DoD employees, "[a]djudicating this claim arising from the plaintiff's military employment would thus interfere with the military's constitutionally delegated authority over its personnel." *Id*. at 11:21-24.

      I agree with Takagaki. Ellawendy cannot escape the military/DoD context in which his

11

claim originates. And "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs unless Congress specifically has provided otherwise." *Ziglar*, 137 S. Ct. at 1861 (citation omitted). I see no indication that Congress has provided otherwise. Here there are two reasons to pause before applying *Bivens* in this context and I decline to do so. *See Egbert*, 142 S. Ct. at 1803 ("If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.") (citation and quotation marks omitted).

A *Bivens* extension is not warranted for the reasons articulated above. Ellawendy's claim against Takagaki is DISMISSED with prejudice because amendment cannot cure it.[1]

### III. Whether Ellawendy's Claim is Barred on Other Grounds

There is another reason that warrants dismissing Ellawendy's claim. A "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (citation omitted). "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (same). Because "[s]overeign immunity is jurisdictional in nature," "there is no subject matter jurisdiction unless sovereign immunity is waived." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019) (citation omitted).

Although Takagaki does not raise this issue in his motion to dismiss, courts "must raise issues concerning our subject matter jurisdiction sua sponte." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Per the complaint, Ellawendy sued Takagaki "in his official capacity." SAC ¶ 1. The case law makes clear that this is not permissible. In addition to the above-mentioned issues with

---

[1] I need not address Takagaki's arguments that the Military Claims Act is an additional alternative remedial structure or that potential burdens on government operations also counsel hesitation about extending *Bivens*. *See* MTD at 9:13-10:10, 12:3-13:3. There are enough special factors that do so without considering these arguments.

Ellawendy's claim, this too warrants dismissal.

## CONCLUSION

Takagaki's motion is GRANTED and Ellawendy's claim against Takagaki is DISMISSED with prejudice. Because this is the only surviving claim in the case, it is DISMISSED.[2]

**IT IS SO ORDERED.**

Dated: December 19, 2022

William H. Orrick
United States District Judge

---

[2] Ellawendy filed two other matters that can be resolved here. First is a request that I order the production of Takagaki's personnel file, which Ellawendy asserts that he sought from the Army under the Freedom of Information Act ("FOIA") and was denied. *See* Dkt. No. 56. Takagaki opposed on various grounds. Dkt. No. 57. Ellawendy's request is DENIED. Although FOIA grants district courts the power to "order the production of any agency records improperly withheld from the complainant," this case is not the proper vehicle for Ellawendy to seek such relief. *See* 5 U.S.C. § 552(a)(4)(B). FOIA requires *agencies* to make certain information public; Takagaki is an individual and the relevant agency, the Army, is not a defendant in this case. *See id.* § 552(a). Moreover, the denial letter Ellawendy submitted in support of his request came from the Defense Contract Audit Agency, which audits DoD contracting offices. *See* Dkt. No. 60. It is unclear whether the Army in fact withheld the requested records from Ellawendy, warranting any action by the court.

Ellawendy later filed a motion to compel, styled as a *Pitchess* motion, also seeking Takagaki's personnel file. Dkt. No. 64. Although a criminal defendant can compel certain police personnel records under *Pitchess* in state court, "*Pitchess* procedures do not apply in federal court." *Daniels v. Villanueva*, No. 20-CV-01169, 2021 WL 5933104, at *1 (C.D. Cal. Jan. 29, 2021); *see also Garrett v. Macomber*, No. 16-CV-1336, 2019 WL 6330269, at *8 (E.D. Cal. Nov. 26, 2019) (stating that "a *Pitchess* motion is not the proper method for obtaining peace officer personnel records" in federal civil rights cases); *Morris v. Barra*, No. 10-CV-2642, 2012 WL 4900203, at *4 (S.D. Cal. Oct. 15, 2012) (same). Moreover, it does not appear that Ellawendy followed the proper procedure for attempting to obtain this discovery, as outlined in Section 4 of my Standing Order for Civil Cases. In any case, because I am dismissing Ellawendy's claim, any need for discovery is now moot.

13